UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JACQUES GEORGE RODRIGUE, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 20-1240** |
| **WENDY WOLFE RODRIGUE MAGNUS** | **SECTION I** |

### ORDER & REASONS

Before the Court is defendant Wendy Wolfe Rodrigue Magnus's ("Wendy") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction or, alternatively, Rule 12(b)(6) for failure to state a claim.[1] The plaintiffs, Jacques George Rodrigue ("Jacques"), André George Rodrigue ("André"), and the Rodrigue Charitable Remainder Unitrust No. 1 (the "Unitrust") (collectively, the "plaintiffs") filed a memorandum in opposition,[2] to which Wendy replied.[3] The Court grants the motion because it lacks subject matter jurisdiction.

**I.**[4]

Artist George G. Rodrigue, Jr. ("George") gained fame for his iconic "Blue Dog" paintings.[5] He died in 2013, survived by his second wife, Wendy (the defendant here), with whom he was married for the last sixteen years of his life, and his two children

---

[1] R. Doc. No. 10.
[2] R. Doc. No. 17.
[3] R. Doc. No. 23.
[4] The Court takes judicial notice herein of certain courts' records and rulings (but not their factual findings), which is proper when deciding this Rule 12(b)(1) motion. *See, e.g.*, *Gray ex rel. Rudd v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 407 n.7 (5th Cir. 2004).
[5] R. Doc. No. 9, at 3 ¶ 6 (first amended and supplemental declaratory complaint).

1

from his first marriage, Jacques and André (plaintiffs here).[6] George disposed of his property in a last will and testament, which left his interest in his copyrights to two trusts: (1) the George Godfrey Rodrigue, Jr. Family Trust (the "Family Trust"), and (2) the Rodrigue Charitable Remainder Unitrust No. 1 (the "Unitrust").[7]

After George's death, Jacques and André sued Wendy and her second husband, Douglas Magnus ("Douglas"), in state court under a variety of theories, including a copyright infringement claim against Douglas for his use of Blue Dog images in jewelry he created.[8] After Wendy removed that case to this Court—based on exclusive federal jurisdiction under the Copyright Act[9]—the plaintiffs amended their complaint to withdraw the infringement claim; this Court remanded the case to state court.[10]

In state court again, Wendy moved to enjoin Jacques from selling physical prints that she co-owned, as well as new prints made from the intellectual property that she co-owned.[11] The requested injunction was granted.[12] Then, Jacques and Wendy jointly moved to amend the injunction to cover only co-owned physical

---

[6] *Id.* at 3 ¶ 7.
[7] *Id.* at 4–5 ¶¶ 12–14.
[8] *See Rodrigue v. Magnus*, No. 19-12036, R. Doc. No. 1, at 2 (E.D. La. Aug. 6, 2019) (notice of removal).
[9] *Id.*
[10] *Rodrigue v. Magnus*, No. 19-12036, R. Doc. No. 16 (E.D. La. Sept. 4, 2019) (remand order).
[11] *See generally* R. Doc. No. 1-6 (state court motion for entry of preliminary injunction).
[12] *See* R. Doc. No. 10-2, at 6 (order granting amended preliminary injunction, referencing earlier injunction).

prints—not the intellectual property thereto.[13] The state court granted the motion, removing from the injunction the restraints on intellectual property.[14]

Following all of that, Jacques and André, joined by Jacques in his official capacity as trustee for the Unitrust, brought this declaratory judgment action. They ask this Court to declare the following as to the copyrights created during George's marriage with Wendy: (1) "[b]y operation of copyright law," George "alone held all exclusive copyrights to his created works;" (2) the "Family Trust and Unitrust are the sole owners of all exclusive copyrights owned by" George upon his death; (3) the "Unitrust holds all copyrights related to the physical prints that were donated to the Unitrust" by George's First Codicil and "the Family Trust holds the copyrights to the remainder, as transferred by" George's Last Will and Testament; (4) Wendy "does not own copyrights to any of" George's "works or prints that are owned by the Family Trust and the Unitrust by operation of the Judgment of Possession;" (5) Wendy "has only an arguable claim to a percentage of the *economic benefit* derived from" George's "copyright," which "does not confer any controlling or exclusive rights to [Wendy,] the non-author spouse, as decided in *Rodrigue v. Rodrigue*[, 218 F.3d 432 (5th Cir. 2000)];" (6) Wendy "owns none of the copyrights to artwork created by" George; and (7) Wendy "does not own or co-own any copyrights to prints made from George's original artwork."[15]

---

[13] *Id.* at 2; *see also* R. Doc. No. 17, at 5 (stating the parties "reached a compromise regarding the injunction issue in an effort to allow Rodrigue Studios to continue to operate pending the litigation").
[14] R. Doc. No. 10-2, at 4.
[15] R. Doc. No. 9, at 10–11 ¶ 40 (emphasis in original).

Wendy has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), claiming that neither the plaintiff's declaratory complaint, nor any hypothetical claim that Wendy could raise, arises under federal law.[16] The Court agrees for the reasons that follow.

## II.

Pursuant to Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). Where "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Id.* (citing *McDaniel v. United States*, 899 F. Supp 305, 307 (E.D. Tex. 1995)). That party must prove jurisdiction by a preponderance of the evidence. *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008). In evaluating jurisdiction, courts must resolve disputed facts without giving a presumption of truthfulness to the plaintiff's allegations. *Williamson v. Tucker*, 645

---

[16] *See* R. Doc. No. 10. Alternatively, Wendy asks this Court to dismiss for failure to state a claim under Rule 12(b)(6). Because the Court concludes it lacks jurisdiction, it cannot reach that merits-based argument. *Ramming*, 281 F.3d at 161.

4

F.2d 404, 413 (5th Cir. 1981) (citing *Mortensen v. First Fed. Savings and Loan Assoc.*, 549 F.2d 884, 891 (3d Cir. 1977)). A court may dismiss an action for lack of subject matter jurisdiction "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Spotts v. United States*, 613 F.3d 559, 565–66 (5th Cir. 2010) (quoting *St. Tammany Parish, ex rel. Davis v. Fed. Emer. Mgmt. Agency*, 556 F.3d 661, 663 (5th Cir. 2007)).

### III.

Federal courts have limited jurisdiction. *See* U.S. Const. art. III, § 2. Generally, a case "arises under" federal law "only if a federal question appears on the face of the plaintiff's well-pleaded complaint." *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008). But the inquiry is slightly different when the plaintiff sues for only a declaration. That is because a federal question is not necessarily present every time a declaration is sought—"the Declaratory Judgment Act does not 'extend' the 'jurisdiction' of the federal courts." *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 197 (2014) (quoting *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)). In other words, "in an action for declaratory judgment, the inquiry is inverted: Since a declaratory judgment action is inherently anticipatory, the federal issue must form part of the hypothetical well-pleaded complaint that the declaratory judgment *defendant* would have filed but for the

5

anticipatory action." *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 395 (5th Cir. 2015) (citing *Skelly Oil*, 339 U.S. at 671) (emphasis added).

That rule is straightforward, but it is unclear whether it must be applied in all declaratory judgment actions. For example, if the well-pleaded declaratory complaint contains issues that necessarily arise under federal law, is that sufficient to confer jurisdiction? Or must the Court reject that and look *only* to the declaratory defendant's hypothetical cause of action, per *Skelly Oil*? As explained below, the Fifth Circuit has applied the former approach before, albeit implicitly. *See generally Goodman v. Lee*, 815 F.2d 1030 (5th Cir. 1987). Fortunately, this Court need not decide which approach is correct—because jurisdiction is lacking under both. But first, the Court will provide an overview of each version of the rule.

Start with the general rule for these cases: where a federal question is the alleged jurisdictional basis for a declaratory judgment, courts "ask whether[,] 'if the declaratory judgment *defendant* brought a coercive action to enforce its rights, that suit would necessarily present a federal question.'" *Barrois*, 533 F.3d at 329 (quoting *Franchise Tax Bd. of Cal. v. Constr. Lab. Vacation Tr. for S. Cal.*, 463 U.S. 1, 19 (1983)) (emphasis added). In such cases, the "plaintiff cannot evade the well-pleaded complaint rule by using the declaratory judgment remedy to recast what are in essence merely anticipated or potential federal defenses as affirmative claims for relief under federal law." *Id.* (citing *TTEA v. Ysleta del Sur Pueblo*, 181 F.3d 676, 681 (5th Cir. 1999)).

The federal question that this case allegedly arises under is, unsurprisingly, the Copyright Act. Federal courts have exclusive jurisdiction over any "civil action arising under any Act of Congress relating to . . . copyrights." 28 U.S.C. § 1338(a). To determine whether an action so arises, the Fifth Circuit uses Judge Friendly's test from *T.B. Harms Co. v. Eliscu*:

> [A]n action "arises under" the Copyright Act if and only if [(1)] the complaint is for a remedy expressly granted by the Act, *e.g.*, a suit for infringement or for the statutory royalties for record reproduction, . . . or [(2)] asserts a claim requiring constructing of the Act, . . . or, [(3)] at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim. The general interest that copyrights, like all other forms of property, should be enjoyed by their true owner is not enough to meet this last test.

339 F.2d 823, 828 (2d Cir. 1964); *see Goodman*, 815 F.2d at 1031 (adopting the *T.B. Harms* test). "[M]ost disputes about ownership of a copyright do not arise under the copyright laws for purposes of jurisdiction." 13D Charles Alan Wright, Arthur R. Miller, & Richard D. Freer, *Fed. Prac. & Proc. Juris.* § 3582 (3d ed. 2021) (gathering cases).

As alluded to above, this is where the jurisdictional analysis has gotten hazier. The manner in which the Fifth Circuit applied *Harms* in *Goodman* is difficult to square with the reverse-well-pleaded-complaint rule from *Skelly Oil* and *Franchise Tax Board*, described above.[17] That is, the court in *Goodman* looked only to the *plaintiff's* declaratory complaint—not a hypothetical coercive claim that the

---

[17] Indeed, *Goodman* cited neither *Skelly Oil* nor *Franchise Tax Board*. *See generally Goodman*, 815 F.2d at 1030–32.

7

declaratory *defendant* could bring—to determine whether the declaratory action arose under the Copyright Act. *See Goodman*, 815 F.2d at 1031–32. The court concluded that the plaintiff's claim—which asserted that she "was a co-author of the copyrighted material and that it was a joint work under the definition contained in 17 U.S.C. § 101"—"involve[d] the validity of the copyright itself under the Copyright Act." *Id.* at 1032. Accordingly, the court found it had jurisdiction. *Id.*

It therefore appears that, at least under *Goodman*, where a declaratory plaintiff's affirmative claim arises under the Copyright Act (*e.g.*, a claim to declare the plaintiff a co-author), jurisdiction is satisfied. *See also Bridgmon v. Array Systems Corp.*, 325 F.3d 572, 575 n.4 (5th Cir. 2003) (hypothesizing that jurisdiction is present if a "declaratory judgment claim . . . ar[o]se under the Copyright Act," but declining to "address this complicated jurisdictional issue").

Ultimately, this Court need not decide whether it must look only to Wendy's coercive claim (as *Skelly Oil* and *Franchise Tax Board* dictate), or to the plaintiffs' declaratory complaint (as in *Goodman*), because it concludes, as explained below, that the result is the same either way. Neither Wendy nor the plaintiffs have a claim that (1) seeks a remedy expressly granted by the Copyright Act, (2) requires construction of the Act, or (3) is controlled by a distinctive policy of the Act.

### A. No Party Seeks a Remedy Under the Copyright Act

The plaintiffs do not seek a remedy under the Copyright Act. They concede that their "declaratory action does not seek monetary damages for infringement."[18]

---

[18] R. Doc. No. 17, at 6.

8

Had they sought such a claim for infringement, that would be a "remedy" under the Copyright Act.  *See* 17 U.S.C. §§ 502–05 (providing legal and equitable "[r]emedies for [i]nfringement"); 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.01(A)(1)(a) (noting that a claim for infringement is a "prototypical case invoking federal jurisdiction"); *Asunto v. Shoup*, 132 F. Supp. 2d 445, 454 (E.D. La. 2000) (Duval, J.) (finding that because the plaintiff's claim was "not one for copyright infringement," it did not seek a remedy under the Copyright Act).  Instead, they seek only a declaration "to settle the ownership of the copyrights."[19]

But the plaintiffs do not identify a provision of the Copyright Act purporting to confer such a remedy.  The most they claim is that the "Copyright Act grants the owner of copyrighted works the exclusive rights to reproduce, distribute, display and prepare derivatives of the copyrighted works," implying that this, somehow, creates a remedy to "settle" ownership of copyrighted works.[20]

The plaintiffs' argument clashes with the text of the Copyright Act—which provides, in the context of copyright transfers at death, that "ownership of a copyright may be . . . *bequeathed by will* or pass as personal property by the *applicable laws of intestate succession*."  17 U.S.C. § 201(d)(1).[21]  The drafters of the Copyright Act could

---

[19] *Id.*
[20] *Id.* (citing 17 U.S.C. § 106).
[21] The statute's next clause further provides:
> Any of the exclusive rights comprised in a copyright, including any subdivision of any of the rights specified by [17 U.S.C.] § 106, may be transferred as provided by clause (1) and owned separately.  The owner of any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner by this title.

9

have provided a remedy by which to adjudicate disputes involving the transfer of copyrights upon death. But they opted instead to defer to the testator-author's will or, if there is no will, to the "applicable laws of intestate succession." *Id.* A leading commentator has observed that this "leaves no doubt that, at least in the case of deceased authors, state law controls disposition of copyright ownership." 1 Nimmer & Nimmer § 6A.02(A)(1)).[22] Accordingly, because the plaintiffs do not seek a remedy under the Copyright Act, the first prong of *T.B. Harms* does not provide a basis for jurisdiction.

Nor does Wendy's coercive claim for relief—currently pending in state court—seek a remedy under the Copyright Act. Her claim is based only on Louisiana community property law—she argues that "any intellectual property that George Rodrigue created [during George's and Wendy's marriage] was community property. The intellectual property from this period is owned 50% by Wendy Rodrigue and 50% by the marital trust."[23] Like the plaintiffs' claim, this does not seek a remedy under the Copyright Act—it seeks to settle only the *ownership* of the copyrights under state law. Although Wendy previously sought to enjoin Jacques's use of intellectual property that she co-owns (*i.e.*, "any re-print, re-creation, or item that utilizes

---

17 U.S.C. 201(d)(2).
[22] Although the Fifth Circuit has not had the occasion to so squarely hold, other circuits have. *See, e.g., T.B. Harms Co.*, 339 F.2d at 827 ("The relevant statutes create no explicit right of action to enforce or rescind assignments of copyrights . . . [nor] to fix the locus of ownership."); *Dolch v. United Calif. Bank*, 702 F.2d 178, 180–81 (9th Cir. 1983) (holding that the validity of a trustee's assignments of heirs' copyright renewal rights was a question of state law that did not confer federal jurisdiction).
[23] R. Doc. No. 9, at 7 ¶ 22 (quoting Wendy's state-court complaint) (emphasis omitted).

10

intellectual property created by George" during the marriage),[24] she no longer does so.[25] The parties jointly sought, and the state court granted, an amendment to the preliminary injunction to that effect.[26] Now, Wendy asserts only a state-law ownership right to "any Rodrigue artwork created by George" during the marriage.[27]

Neither Wendy nor the plaintiffs seek a remedy under the Copyright Act. It cannot, therefore, provide a basis for jurisdiction.

### B.     This Case Does Not Require Construction of the Copyright Act

The plaintiffs' claim does not require construction[28] of the Copyright Act. They point to a purported "conflict between the Copyright Act and Louisiana law" that was not "fully resolve[d]" by the Fifth Circuit in *Rodrigue v. Rodrigue*, 218 F.3d 432 (5th Cir. 2000), which they argue requires this Court to construe the Copyright Act.[29] They are wrong. Still, a summary of *Rodrigue* will provide helpful context.

*Rodrigue* involved a dispute between George and his first wife, Veronica, from whom he had divorced. *Id.* at 433. At issue was whether the Copyright Act effectively vests all intellectual-property rights solely in the author-spouse (George) even following *divorce*—notwithstanding Louisiana's contrary community property

---

[24] R. Doc. No. 1-6, at 10 (Wendy's state-court petition for a preliminary injunction).
[25] R. Doc. No. 10-2, at 2 (the plaintiffs' joint motion to amend preliminary injunction).
[26] *Id.* at 4.
[27] *Id.* at 2.
[28] "The act or process of interpreting or explaining the sense or intention of a writing . . . ; the ascertainment of a document's meaning in accordance with judicial standards[.]" *Construction*, *Black's Law Dictionary* (9th ed. 2009); *see also Westmorland v. Westmorland*, No. 07-1435, 2007 WL 4358309, at *2 (W.D. Wash. Dec. 10, 2007) (finding no federal jurisdiction because the plaintiff "asks the Court to *apply* the Copyright Act not *interpret* the Copyright Act" (emphasis in original)).
[29] R. Doc. No. 17, at 6.

11

rules—to the exclusion of the non-author former spouse (Veronica). *Id.* at 434. Veronica's counterclaim asserted that, as a former member of the community regime, she would be entitled to half of all community property. *Id.* George sought a declaration that he was the sole owner of all intellectual property—including the economic benefits from that property—in all paintings created during their marriage; he also sought to enjoin Veronica from seeking a contrary declaration, making image transfers, and suing him for copyright infringement. *Id.* The Fifth Circuit held that "an author-spouse in whom a copyright vests maintains exclusive managerial control of the copyright but that the economic benefits of the copyright work belong to the community while it exists and to the former spouses in indivision thereafter." *Id.*[30]

Seizing on *Rodrigue*, the plaintiffs argue that "the Court has to further interpret the intersection of Louisiana community property law and the Copyright Act."[31] They explain that *Rodrigue* "holds that the community between the spouses has only an interest in the 'economic benefit' of the copyrights. Defendant urges an interpretation of *Rodrigue* that the copyrights *themselves* are community property. If her interpretation is correct . . . the Court must resolve whether the five rights that vest in the author-spouse . . . remain separate following the termination of the community."[32]

---

[30] Jurisdiction was not at issue in *Rodrigue*. *See Bridgmon*, 325 F.3d at 575 n.4 (observing the same).
[31] R. Doc. No. 17, at 6.
[32] *Id.* at 6–7 (emphasis in original). The plaintiffs further argue that "[n]o provision of the Copyright Act provides for the divesting of the management powers vested in the author spouse, and the Court would have to weigh how George's death impacts that bundle of rights." *Id.* The Court is puzzled by this argument. The Copyright

12

Wendy responds on two fronts: first, Wendy pushes back on the plaintiffs' assertion that the Fifth Circuit failed to fully resolve the "conflict" between Louisiana law and the Copyright Act.  From Wendy's view, the Fifth Circuit resolved the conflict to the extent one existed[33]—by holding that the economic benefits of copyrighted works created during the community's existence belong to the community, while the rights to manage the copyrighted works belong to the author-spouse during the community and following divorce.  That, Wendy argues, was not so much a conflict resolution as it was an application of Louisiana's community property law to the facts of the case—in that, under Louisiana law, "a spouse retains exclusive management of community-owned movables titled in his or her name following a *divorce*."[34]

But the question here, Wendy notes, is quite different: how those rights transfer upon *death*, not divorce.  When death triggers the property transfer, Wendy says, "state law is different.  Exclusive management ceases, and the spouses . . . revert to simple co-ownership."[35]  Because that question—how property rights transfer upon

---

Act *does* envision divestment of such powers—"the Act explicitly allows for subsequent vesting in non-authors, either jointly with the author or subsequent to him by virtue of transfer of all or lesser portions of the copyright." *Rodrigue*, 218 F.3d at 436.  The claim that the Copyright Act does not 'provide for' such divestment is dead on arrival.

[33] The Fifth Circuit rebuffed George's preemption arguments, which were based on a supposed conflict between the Copyright Act and Louisiana community property law. *See id.* at 435 ("We do disagree . . . with [George's] expansive view of the scope of the conflict between copyright law and community property law, and thus with the extent of the preemptive effect of such conflict.").

[34] R. Doc. No. 23, at 4 (citing *Rodrigue*, 218 F.3d at 435; La. Civ. Code arts. 2369.1 & 2369.5) (emphasis in original).

[35] *Id.* (citing La. Civ. Code art. 2369.1, cmts. (a)–(b); *In re Succession of Jenkins*, 936 So. 2d 268, 270 (La. Ct. App. 2d Cir. 2006); *Junca v. Junca*, 747 So. 2d 767, 769 (La. Ct. App. 1st Cir. 1999)).

13

death—is answered solely by Louisiana law, she reasons, construction of the Copyright Act is unnecessary.

Second, Wendy argues that the plaintiffs' argument boils down to a preemption defense to Wendy's assertion of co-ownership under Louisiana law. Put another way: the plaintiffs argue that the Copyright Act preempts her state-law right to own and manage half of the community's copyrights.[36] Relying on the well-pleaded complaint rule, Wendy argues that an anticipated federal defense is insufficient to support federal-question jurisdiction.[37]

Wendy is right. As mentioned above, the Copyright Act's text leaves the question of copyright ownership following a death to state law. *See* 17 U.S.C. § 201(d)(1) ("[O]wnership of a copyright . . . may be bequeathed by will or pass as personal property by the applicable laws of intestate succession."). That means that determining ownership does not require construction of the Copyright Act. *Rodrigue* recognized as much: "State law governs such death-related transfers and the resulting co-ownerships they produce[.]" 218 F.3d at 441.

The plaintiffs point to no case suggesting otherwise, and the Court has found none. Indeed, where the issue of copyright ownership turns solely on questions of state law, courts consistently hold that those questions do not require construction of, and the case does not arise under, the Copyright Act. *See, e.g.*, *Asunto*, 132 F. Supp. 2d at 454 (finding claims that "revolve around, and depend upon, state law

---

[36] *Id.* at 3–4.
[37] *Id.* at 3 n.4.

14

issues of contract, fiduciary duty and mandate" did not require construction of the Copyright Act); *Dorsey v. Money Mack Music, Inc.*, 304 F. Supp. 2d 858, 868 (E.D. La. 2003) (Duval, J.) (similar); *Westmorland*, 2007 WL 4358309, at *2 (finding no federal jurisdiction because the plaintiff "asks the Court to *apply* the Copyright Act not *interpret* the Copyright Act" (emphasis in original)).

It is true that, where the question of ownership turns on a provision of the Copyright Act, such as whether the plaintiff is an "author" of the copyrighted work, the claim to ownership requires construction of the Copyright Act. *Goodman*, 815 F.2d at 1031–32. Here, however, Louisiana law alone will resolve the matter. It would be one thing if the plaintiffs sought a declaration that they are co-*authors* of copyrighted works. *See id.* But they seek only a declaration as to co-*ownership*, a declaration that requires no construction of the Copyright Act. The same is true for Wendy's claim for coercive relief—which would be that, according to Louisiana community property law, she owns an undivided one-half interest in the copyrights (not just the economic benefits of the copyrights, as is the case now). The answer to that question turns only on whether Louisiana community property law requires it; it does not require construction of the Copyright Act. Accordingly, this does not provide a basis for jurisdiction either.

### C. This Case Does Not Implicate a Distinctive Policy of the Copyright Act Necessitating Federal Intervention

Finally, neither the plaintiffs' declaratory claim nor Wendy's coercive claim implicates a distinctive policy of the Copyright Act. *T.B. Harms* recognized that this third basis for copyright jurisdiction is "perhaps more doubtful[]" than the other two.

15

339 F.2d at 828. And it made clear that "[t]he general interest that copyrights, like all other forms of property, should be enjoyed by their true owner is not enough to meet this . . . test." *Id.* At bottom, that is the only interest the plaintiffs claim here.

The plaintiffs argue that Wendy should not be able to exercise co-ownership over George's copyrights because principles underlying the Copyright Act counsel against it. They argue that "unilateral control encourages authorship, because an author can be confident that whatever the author creates, the author and her designees will fully control."[38] They similarly assert that "the efficiency of the copyright market" is "increase[d]" when "management control remains in the hands of a single individual or entity."[39] They offer no legal support for either assertion.[40] It would indeed be hard for them to do so, because the Copyright Act expressly allows for transfer of copyrights by testamentary or intestate disposition, which may result in the very co-ownership that the plaintiffs protest. *See* 17 U.S.C. § 201(d)(1). In fact, *Rodrigue* acknowledged that such transfers are "likely to produce co-ownership of undivided interests in the copyright among the author's heirs or legatees." 218 F.3d at 441. But the court had no problem with that. *Id.* ("State law governs such death-related transfers and the resulting co-ownerships they produce, and *does so routinely without impairing federal interests*." (emphasis added)).

*Rodrigue*'s preemption analysis is persuasive; this Court concludes the same—this case implicates no distinctive policy of the Copyright Act. *Id.* at 439–40. Even

---

[38] R. Doc. No. 17, at 8.
[39] *Id.*
[40] *See id.*

16

under Louisiana's community property regime following *Rodrigue*, George could enjoy all that he was entitled to—exclusive management of the copyrighted works, and an undivided one-half interest in the works' economic benefits. Nothing in the Copyright Act—policy or otherwise—demands that his exclusive managerial right vest in only one heir following his death, as the plaintiffs suggest. Accordingly, this cannot serve as a basis for jurisdiction either.

Nor does Wendy's coercive claim implicate federal copyright principles. She asks simply for an application of community property law—to determine how certain property (copyrights) created during a community regime is distributed following the death of a community member. That does not implicate any policy of the Copyright Act. Therefore, this cannot serve as a basis for jurisdiction either.

## IV.

Accordingly,

**IT IS ORDERED** that Wendy's motion to dismiss is **GRANTED**. The plaintiffs' complaint is hereby **DISMISSED** because the Court lacks subject matter jurisdiction over it.[41]

New Orleans, Louisiana, April 21, 2021.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[41] Because the Court dismisses for lack of subject matter jurisdiction, it will not reach Wendy's alternative argument for dismissal under Rule 12(b)(6). *See Ramming*, 281 F.3d at 161.